IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| EON WALDEN, et al., | ) | No. CV-04-6680 AWI/DLB |
| | ) | |
| | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANTS' |
| Plaintiff, | ) | MOTION TO DISMISS FIRST, |
| | ) | SECOND AND THIRD CLAIMS FOR |
| vs. | ) | RELIEF IN FOURTH AMENDED |
| | ) | COMPLAINT (Doc. 47) AND |
| | ) | DIRECTING PLAINTIFFS TO FILE |
| JANE MOFFETT, et al., | ) | A FIFTH AMENDED COMPLAINT |
| | ) | WITHIN 30 DAYS |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

On April 12, 2006, an Order was entered dismissing the Second and Fourth Claims for Relief in plaintiffs' Third Amended Complaint with leave to amend.

Plaintiffs, who are proceeding <u>in pro per</u>, filed their Fourth Amended Complaint (FAC) on May 30, 2006. Plaintiffs are Eon Walden and Corey Victor through his guardian ad litem Jumoke Walden. Defendants are Jane Moffett, principal of Sonoma Elementary School in Modesto; Marie Lagos, a teacher at Sonoma Elementary School; James Enochs, Superintendent of Modesto City

1  Schools; Jim Pfaff, Assistant Superintendent of Modesto City
2  Schools; and Modesto City Schools District, alleged to "an entity
3  engaged in public education and who is the recipient of Federal
4  financial assistance [and which] was the home school district for
5  Plaintiff Corey Victor from grades K-4."  The FAC alleges:

> Plaintiff Corey Victor is now an 11 year old student and is described by the Modesto City Schools as a 'personable young man of African-American male heritage who presents quite friendly.'  Corey has an articulation disorder, which is below what is expected for his chronological age and developmental level.  This disorder reduces intelligibility and significantly interferes with communication and attracts adverse attention.  Corey is classified as a Special Education student.  Although not an ADHD or ADD student, Modesto City Schools did determine Corey has a 'problem attending.'  Corey has never been a discipline problem, either inside or outside of the home.  He attended Sonoma Elementary School from kindergarten to fourth grade.  His is a member of the Jehovah's Witness faith.

16 Plaintiff Eon Walden is alleged to be Corey's maternal
17 grandmother and Corey's authorized caregiver, to be of African-
18 American heritage and an ordained minister in the Jehovah's
19 Witness religion.  The FAC alleges that the action "arises out of
20 the racial and religious discrimination and disability-based
21 discrimination meted out" by defendants; that "as a student and
22 parent in the Modesto City Schools District, [plaintiffs] were
23 the victims of assault and battery, harassment, racial, religious
24 and disability based prejudices and other violations of their
25 federally protected rights"; that "Modesto City School officials,
26 teachers and personnel failed to address Plaintiffs'

2

victimizations", that "said failures are due to Defendants' racial and religious intolerance and disability-based bias"; and that "the Defendants' practices have created a disparate impact on Plaintiffs and have caused them to suffer physical, emotional and financial harm, that has resulted in the denial of Plaintiff Victor's right to a Free and Appropriate Public Education."

The First Claim for Relief, captioned "Violation of Plaintiffs; [sic] First Amendment Right to Religious Freedom", is alleged against defendants Moffett, Lagos and MCS and alleges that defendants "violated Plaintiffs' right to the free exercise of Plaintiffs' religion when Plaintiff Victor was forced to participate in school sponsored holiday activities" and when "Defendant Lagos forced Plaintiff Victor to participate in flag pledging ceremonies."

The Second Cause of Action, captioned "Violation of Plaintiffs' Right to a FAPE by Denying Plaintiffs' Right to Due Process", alleges in pertinent part:

> 15.  Plaintiffs contend Defendants were negligent when they failed to enforce District mandated codes that were designed to protect all students from physical pain, verbal attack, fright, nervousness, fear, humiliation and anxiety.
>
> 16.  Plaintiffs contend they were denied procedural due process when the Defendants refused to convene proceedings on Plaintiffs' behalf, to hold Plaintiff Victor's abusers accountable to established codes of conduct.
>
> 17.  Plaintiffs contend said refusal constituted negligence on the parts of the Defendants, and that said negligence made Plaintiff Victor an ongoing target for

3

1
2
3
4

continued abuse, thereby creating a hostile learning environment and constituting a denial of Plaintiff Victor's right to a FAPE as mandated by the IDEA and the Americans with Disabilities Act of 1990. (20 U.S.C. § 1415(a). [sic]

5
6
7
8
9

18.   Plaintiffs further contend a FAPE is an education that takes place in a school environment that addresses a disabled student's 'unique educational needs,' and that such 'needs' are broadly construed to include the handicapped child's academic, social, **health, emotional**, communicative, **physical** and vocational needs.'  (H.R.Rep. No. 410, 98th Cong.)(Hall v. Vance County Board of Education.)

10
11
12
13

19.   Plaintiffs contend the Defendants were aware of Plaintiff Victor's disability, and that said awareness included knowledge his disability is greatly exasperated when he is under duress, and that at such times he is incapable of providing succinct verbal responses.

14
15
16

20.   Plaintiffs contend Defendants denied Plaintiffs the right to due process regarding Plaintiff Victor's verbal reports of victimization, when Defendants:

17
18
19

- Failed to convene proceedings in a supportive atmosphere where the young Plaintiff could successfully verbalize the facts surrounding his victimizations;

20
21
22

- Failed to convene proceedings with appropriate law enforcement agencies on Plaintiff Victor's behalf regarding his reports of abuse; and when they

23
24
25

- Failed to convene proceedings on Plaintiff Victor's behalf, to institute District initiated investigations into his allegations of abuse and mistreatment.

26

21.   Plaintiffs contend such negligent failures also contributed to the creation of

4

a hostile learning environment thereby creating further denials of Plaintiff Victor's right to a FAPE as mandated by the IDEA and the Americans with Disabilities Act of 1990.  (20 U.S.C. § 1415(a). [sic]

22.  Plaintiffs contend Corey Victor's right to a FAPE was further breached when the Defendants (contrary to District policy) repeatedly denied Plaintiffs' requests to meet and confer with District personnel in an attempt at creating a District sponsored plan to protect Plaintiff Victor's on campus physical health and emotional safety.

23.  Plaintiffs contend the example of one such denial was the District's refusal to convene proceedings that included Plaintiff Walden and schoolyard aide Glenda Hyde, to discuss the validity of Plaintiff Victor's allegations.  Hyde dragged him across the schoolyard by his ear calling a 'black boy.' [sic]

24.  Plaintiffs contend such proceedings should have been convened because Plaintiff Victor was repeatedly victimized by way of physical attacks, verbal assaults, harassment and intimidation by Modesto City Schools' students and personnel.

25.  Plaintiffs contend that in light of Corey Victor's ongoing physical victimizations and the young Plaintiff's inability to verbally convey his needs, the Defendants' refusal to convene formal proceedings was contrary to established District policy and stonewalled Plaintiff Victor's Victor's [sic] ability to have his 'unique' health, emotional and physical needs met, and therefore constitute gross negligence.

26.  Plaintiffs contend the Defendants' refusal to allow such proceedings, encumbered Plaintiff Victor's ability to fully benefit from the educational plan and further violated his right to FAPE as mandated by the IDEA and the Americans with Disabilities Act of 1990.  (20 U.S.C. § 1415(a). [sic]

5

...

27. Plaintiffs contend this lawsuit does not allege abuses of the **educational component** of Corey Victor's education, and as such, is **not** an attempt to seek redress for the District's failure to provide adequate educational **services**.

28. Plaintiffs contend that although Corey Victor was a Special Education student in the Modesto City Schools system, any of the IDEA's procedural safeguards that would have applied to him, can only make application in matters concerning his **educational program and/or placement**.

29. Plaintiffs contend the source and natures [sic] of the injuries alleged in this lawsuit are not such that they could have been redressed to any degree by the IDEA's administrative procedures and remedies.

30. Plaintiffs contend Corey Victor's injuries are pain and suffering (with regard to his physical injuries), emotional distress (with regard to his physical injuries), fright and humiliation ... all suffered as a direct and proximate result of the Defendants' negligence, and all of which helped contribute to his being denied a FAPE.

31. Plaintiff EON Walden contends the source and nature of her injuries are emotional distress (with regard to her grandson's physical and emotional injuries), the intentional infliction of emotional distress (with regard to her grandson's physical and emotional injuries), fright and humiliation (with regard to her grandson's physical and emotional injuries), and money damages suffered when she was provided no alternative but to transfer Plaintiff Victor to another school during his second grade year in Defendant Lagos' class; and later when she felt forced to leave her Modesto home altogether and relocate her entire family to a more socially tolerant school district.

32. Plaintiffs contend the remedies available under the IDEA would not be well

6

        suited to addressing **any** of the Plaintiffs'
past injuries, and that the remedies
available under the IDEA include educational
services only.  Therefore, Plaintiffs are
precluded from having to exhaust the IDEA's
administrative remedies prior to filing this
action.  <u>Witte v. Clark County School
District</u>, 197 F.3d 1171 (9th Cir.1999).

The Third Claim for Relief, captioned "Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection", and alleges in pertinent part:

        33.  Plaintiffs allege Defendants systematically engaged in a sexually and racially biased code of conduct when they failed to protect the rights of Plaintiff Corey Victor.

        34.  Plaintiffs allege that on March 19, 2002, Plaintiff Victor was unfairly disciplined when he protected himself during an assault by a female non African-American student and that no disciplinary action what so ever [sic] was meted out to Plaintiff Victor's female non-African-American aggressor.

        35.  Plaintiffs further allege that on September 25, 2003, Plaintiff Victor reported to Defendant Moffett that he had been grabbed by the ear and called a 'black boy' by an Anglo-American adult yard aid [sic].

        36.  It is Plaintiffs' contention that Defendant Moffett did nothing to report the alleged incident to the appropriate parental or Law Enforcement authorities.

        37.  Plaintiffs allege Defendants failed to apply an Equal Protection of the Law by refusing to report or stop racially motivated acts of aggression on Plaintiff Victor; and when they failed to take the effective measures to rescind or nullify District policies that perpetuate racial discrimination and an unequal application of the Law.

7

Among other relief, the FAC prays for punitive damages.

Defendants move to dismiss the First, Second and Third Claims for Relief pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.[1]

**A.  Governing Standards.**

Dismissal of a claim pursuant to Rule 12(b)(6) is proper if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In testing the

---

[1] The motion to dismiss was noticed for hearing on July 24, 2006.  Pursuant to Rule 78-230(c), Local Rules of Practice, plaintiffs' opposition was due on July 10, 2006.  Plaintiffs' opposition is dated July 1, 2006 and was filed with the court on July 12, 2006.  In the Order filed on April 12, 2006, Judge Coyle noted:

> Plaintiffs are advised that their in propria persona status does not excuse them from complying with the Federal Rules of Civil Procedure, the Local Rules of Practice, and any court orders.  The failure to timely comply with the rules setting forth the time to file motions or oppositions to motions precludes the opposing parties and the court from being prepared in an efficient manner to hear matters and resolve them.  The court's docket does not permit a party to disregard these rules. Plaintiffs' continued failure to so comply will result in the imposition of sanctions, including the sanction of dismissal.

Because of plaintiffs' untimely opposition to the instant motion, plaintiffs were not entitled to be heard at oral argument and an Order vacating oral argument has been issued.  Plaintiffs again are warned that their continued failure to comply with the rules and court orders will result in the imposition of sanctions, including the sanction of dismissal.

1  sufficiency of a claim against a Rule 12(b)(6) challenge, a court
2  must "accept all material allegations in the complaint as true
3  and construe them in the light most favorable to the plaintiff."
4  North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 580 (9th
5  Cir. 1983).  The court need not, however, "accept legal
6  conclusions cast in the form of factual allegations if those
7  conclusions cannot reasonably be drawn from the facts alleged."
8  Clegg v. Cult Awareness Network, 18 F.3d 752 (9th Cir. 1994).  A
9  claim may be dismissed as a matter of law if there is a lack of a
10 cognizable legal theory or if there are insufficient facts
11 alleged under a cognizable legal theory.  Balistreri v. Pacifica
12 Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  Immunities and
13 other affirmative defenses may be upheld on a motion to dismiss
14 only when they are established on the face of the complaint.  See
15 Morley v. Walker, 175 F.3d 756, 759 (9th Cir.1999); Jablon v.
16 Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980)  The court
17 must determine whether or not it appears to a certainty under
18 existing law that no relief can be granted under any set of facts
19 that might be proved in support of plaintiff's claims.  De Le
20 Crux v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978), cert. denied,
21 441 U.S. 965 (1979).  Also, the pleadings of pro se litigants
22 "are held to less stringent standards than formal pleadings
23 drafted by lawyers."  Hughes v. Rowe, 449 U.S. 5, 10 (1980).

24     **B.  First and Second Claims for Relief - Failure to Allege**
25 **Custom or Policy**.

26     Defendants move to dismiss the First and Second Claims for

9

Relief, contending that the FAC does not allege plaintiffs were deprived of their civil rights pursuant to official policy or custom. Monell v. Dept. of Social Services, 436 U.S. 658 (1978).

Pursuant to Monell, a municipal entity cannot be held liable for the alleged violations of plaintiffs' civil rights in the absence of an allegation that plaintiff was deprived of his rights pursuant to official policy or custom. In the Ninth Circuit, a claim of municipal liability under Section 1983 is sufficient to withstand a motion to dismiss "'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to the official policy, custom, or practice.'" Galbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir.2002), citing Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 624 (9th Cir.1988), quoting Shah v. County of Los Angeles, 797 F.2d 743, 747 (9th Cir.1986).[2]

In opposing this ground for dismissal, plaintiffs assert in pertinent part as follows:

> 15. Plaintiffs have stated a viable claim against the Modesto City School District, in that Plaintiffs' Fourth Amended Complaint clearly states the Defendants' '**practices**' have created a disparate impact on Plaintiffs and have resulted in the denial of Plaintiff Victor's right to a Free and Appropriate Public Education.'
>
> 16. The gravamen of Plaintiffs' 1983 claim

---

[2] Defendants refer to Gillette v. Delmore, 979 F.2d 1342 (9th Cir.1992) as authority for the pleading standard applicable to state a claim for municipal liability under Monell. However, Delmore involved an appeal following a jury trial and does not involve the pleadings requirements under Rule 12(b)(6).

> is that Plaintiff Victor suffered physical and emotional distress during school hours and on school grounds. In these circumstances, the Defendants retained total control over the offenders. The District's failure to exercise disciplinary authority over the offenders resulted in the District's deliberate practice (or custom) of indifference to Plaintiff Victor's safety, injuries, physical needs and religious preference.
>
> ...
>
> 18.  Plaintiffs contend Defendants' practices have been so pervasive and have become so entrenched in the District method of handling students of color, that a District-wide custom clearly has been established.
>
> 19.  Plaintiffs allege Modesto City Schools has at least a 30-year history of deliberate indifference to the health, safety and welfare of Jehovah's Witness students, African American students and other students of color.
>
> 20.  Plaintiffs further contend these practices have become so pervasive, members of the Modesto community asked Plaintiff Walden to organize a Department of Justice sponsored anti-discrimination forum to help students and parents prepare DOJ discrimination complaints.
>
> 21.  The forum was held on February 10, 2005. Plaintiff Walden listened to complaints of racial and religious discrimination at the hands of Modesto City School personnel, some of which extend back as far as 30 years.
>
> 22.  Plaintiffs contend Corey Victor was a victim of these practices and that these practices have indeed become custom.

Plaintiffs' contentions quoted above are not included as allegations in the FAC. As noted, in order to withstand dismissal for failure to state a claim upon which relief can be

11

1  granted, plaintiffs need only allege that the actions or
2  inactions of the individual defendants to official policy, custom
3  or practice.  Because the FAC does not contain such allegations
4  against the Modesto City Schools District, the First and Second
5  Claims for Relief are dismissed with leave to amend.
6       **C.   Third Claim for Relief - Statute of Limitations**.
7       Defendants move for dismissal of the Third Claim for Relief
8  to the extent that it is brought by plaintiff Eon Walden as
9  barred by the statute of limitations.  Defendants concede that
10 the Third Claim for Relief is not time-barred to the extent that
11 it is brought on behalf of plaintiff Corey Victor because of his
12 status as a minor.
13      Plaintiffs assert that the Third Claim for Relief is brought
14 solely by plaintiff Corey Victor and that plaintiff EON Walden
15 does not seek relief pursuant to the Third Cause of Action.
16      Given these representations, defendants' motion to dismiss
17 the Third Claim for Relief as barred by the statute of
18 limitations is denied.
19      **D.   Second Claim for Relief - Failure to Exhaust**
20 **Administrative Remedies**.
21      Defendants move to dismiss the Second Cause of Action to the
22 extent that it is based on the Individuals with Disabilities in
23 Education Act (IDEA) and the Americans with Disabilities Act
24 (ADA) because of plaintiffs' failure to allege exhaustion of
25 administrative remedies.
26      In Robb v. Bethel School Dist. #403, 308 F.3d 1047 (9th Cir.

12

2002), a student with cerebral palsy and her parents brought an action pursuant to 42 U.S.C. § 1983 for damages for lost educational opportunities, emotional distress, humiliation, embarrassment, and psychological injury after the student was removed from the classroom for extended tutoring.  The Ninth Circuit held that a plaintiff who seeks only money damages is required to exhaust administrative remedies before instituting a claim under 42 U.S.C. § 1983 predicated on a violation of the IDEA.  In so holding, the Ninth Circuit explained:

> The IDEA provides federal money to state and local education agencies to assist them in educating disabled children, on the condition that the state and local agencies implement the substantive and procedural requirements of the Act.  The principal purpose of the Act is 'to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs ... [and] to ensure that the rights of children with disabilities and parents of such children and protected.'  20 U.S.C. § 1400(d).
>
> To carry out these objectives, the IDEA provides procedural safeguards to permit parental involvement in all matters concerning the child's educational program and allows parents to obtain administrative and judicial review of decisions they deem unsatisfactory or inappropriate ... Under this scheme of procedural protections, parents are entitled to (1) examination of all relevant records pertaining to evaluation and educational placement of their child; (2) prior written notice whenever the responsible educational agency proposes, or refuses, to change the child's placement; (3) an opportunity to present complaints concerning any aspect of the local agency's provision of a free appropriate public education; and (4) an opportunity for an 'impartial due process

13

> hearing' with respect to any such complaints ... If a party is dissatisfied with or aggrieved by the findings and decisions made after the impartial due process hearing, that party may obtain additional administrative review by the state educational agency. 20 U.S.C. § 1415(g).
>
> The IDEA requires a plaintiff to exhaust his or her administrative remedies before commencing suit if that person is 'seeking relief that is also available under' the IDEA. 20 U.S.C. § 1415(l). Because money damages are not 'available under' the IDEA ..., it might seem that a plaintiff can avoid the IDEA's exhaustion requirement merely by limiting the prayer for relief to money damages ....
>
> With the First, Sixth, Seventh, Tenth, and Eleventh Circuits, we hold that a plaintiff cannot avoid the IDEA's exhaustion requirement merely by limiting a prayer for relief to money damages. We understand 'available' relief to mean relief suitable to remedy the wrong done the plaintiff, which may not always be relief in the precise form the plaintiff prefers ... Our primary concern in determining whether a plaintiff must use the IDEA's administrative procedures relates to the source and nature of the alleged injuries for which he or she seeks a remedy, not the specific remedy requested. The dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies. If so, exhaustion of those remedies is required. If not, the claim necessarily falls outside the IDEA's scope, and exhaustion is unnecessary. Where the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem.

308 F.3d at 1048-1050. The Ninth Circuit in Robb specifically distinguished an earlier decision, Witte v. Clark County School

14

1  District, 197 F.3d 1171 (9th Cir. 1999).  The distinction is
2  explained in Robb:

3     Despite the apparent benefits of the
   exhaustion requirement, the Robbs argue that
4   controlling precedent permits them to opt out
   of the IDEA simply by proclaiming that it
5   does not offer them anything of value.  They
   argue that language in our decision in *Witte
6   v. Clark County School District* ... suggests
   they can avoid the IDEA's exhaustion
7   requirement simply by limiting their prayer
   for relief to money damages.  The Robbs point
8   to the following language: 'Because plaintiff
   seeks only monetary damages, which is "not
9   relief that is available under" the IDEA, ...
   exhaustion of administrative remedies is not
10  required.  *Witte*, 197 F.3d at 1275-76.  But
   the Robbs have taken this quotation out of
11  context.  The context makes it clear that in
   *Witte* we did not rely merely on the fact that
12  the plaintiff had requested money damages.
   We stressed:
13
     Because Plaintiff seeks only
14     monetary damages, which is 'not
     relief that is available under' the
15     IDEA, *and because all educational
     issues already have been resolved
16     to the parties' mutual satisfaction
     through the IEP process,* Plaintiff
17     is not 'seeking relief that is also
     available' under the IDEA, 20
18     U.S.C. § 1415(*l*).

19  *Id*. at 1275 (emphasis added).  Before filing
   suit, the plaintiff in *Witte* already had
20  agreed with the defendant school district -
   through informal processes available under
21  the IDEA or through its formal procedures -
   to new educational plans and services that
22  would address the educational component of
   his injuries.  *Witte*, 197 F.3d at 1275-76.
23  We stated, in other words, that the
   '[p]laintiff in fact ha[d] used
24  administrative procedures to secure the
   remedies that are available under the IDEA.'
25  *Id*. at 1276.  Moreover, the plaintiff was
   seeking only retrospective damages, not
26  damages to be measured by the cost of

15

1
2
3
4
5
6
7
8
9
10

>remedial services (such as those offered under the IDEA). *Id.* Finally, and perhaps most importantly, the plaintiff's allegations centered around physical abuse and injuries. We wrote, 'The remedies available under the IDEA would not appear to be well suited to addressing past physical injuries adequately; such injuries typically are remedied through an award of monetary damages.' *Id.* In *Witte*, neither the genesis nor the manifestations of the abuse were educational. There was no reason to believe the plaintiff's injuries could be redressed to any extent by the IDEA's administrative procedures and remedies. So we permitted the plaintiff to avoid the IDEA's exhaustion requirement. We did not intend to chart a course away from the holdings of our sister circuits.

11
12
13
14
15
16
17
18
19
20

>The Robbs are in a very different position from the claimant in *Witte*. They have not taken full advantage of the IDEA administrative procedures to secure the remedies available thereunder. They do not claim physical injury. And they request money damages to compensate them for psychological and educational injuries the IDEA may remedy. Because their injuries could be redressed to some degree by the IDEA's administrative procedures and remedies, the Robbs' complaint must be dismissed. We agree with our sister circuits that where, as here, a plaintiff has alleged injuries that could be redressed to some degree by the IDEA's administrative procedures and remedies, then the courts should require exhaustion of administrative remedies.

308 F.3d at 1051-1054. See also <u>Blanchard v. Morton School District</u>, 420 F.3d 918 (9th Cir. 2005), wherein the Ninth Circuit held that exhaustion of administrative remedies under the IDEA is not required prior to a parent bringing an action under Section 1983 for damages for emotional distress and lost wages damages caused to the parent:

16

> Blanchard's complaint sought money damages for emotional distress and for lost wages caused by the District's alleged deliberate indifference toward her son's IDEA claims and the District's alleged violations of the IDEA. Money damages for retrospective and non-educational injuries are not available under the IDEA ... That alone is not dispositive, for a plaintiff cannot avoid the IDEA's exhaustion requirement simply by limiting the prayer for relief to money or services that are not provided under the IDEA ... The dispositive question therefore is whether Blanchard is seeking remedy for injuries that could be redressed to any degree by the IDEA's administrative procedures ....
>
> The remedies available under the IDEA include educational services for disabled children ... They do not provide an adequate remedy for Blanchard.
>
> We held in *Witte* that a plaintiff seeking monetary relief for alleged past physical and emotional abuse by school staff was not required to exhaust administrative remedies under the IDEA ... We emphasized that 'all educational issues already have been resolved to the parties' mutual satisfaction through the [administrative] process.' ... That is true here, as well. Following *Witte*, we hold that Blanchard had no remedies under the IDEA to exhaust. Blanchard has resolved the educational issues implicated by her son's disability and has obtained the educational relief available under the IDEA on behalf of her son.
>
> ...
>
> We emphasize that our holding is a narrow one: that there is no procedural barrier to Blanchard's claim that the defendants' acts (as distinct from her child's disability) have caused her to incur damages for emotional distress .... We hold only that, because the IDEA provides no remedy for Blanchard, she need not exhaust administrative remedies before filing suit.

17

420 F.3d at 921-922.

Defendants argue that the allegations of the FAC are controlled by the holding in Robb because of the allegations in paragraphs 22 and 26 of the FAC. Defendants argue:

> These allegations clearly demonstrate that, in addition to the *damages* being sought by Plaintiffs in connection with their Due Process claim, that Plaintiffs base their claim on the alleged failure on the part of the Defendant to provide Plaintiff Victor 'educational services' as mandated by the IDEA. Such educational services could have - indeed should have - been sought by way of the administrative procedures set forth in the IDEA.

Defendants further argue that plaintiffs' reliance on Witte is misplaced because plaintiffs cannot allege that all educational issues have already been resolved to the parties mutual satisfaction through the IEP process given the allegations in paragraphs 22 and 26 of the FAC.

Plaintiffs respond that they are not complaining about any "faultiness" in plaintiff Victor's IEP plan and that they have no objection to the educational plan offered to Victor as the result of IEP meetings and consultations. Plaintiffs assert that when they alleged in paragraph 26 that defendants' actions "encumbered Plaintiff Victor's ability to fully benefit from the educational plan and further violated his right to FAPE as mandated by the IDEA and the Americans with Disabilities Act of 1990", they were not referring to the IEP plan, but "rather the entirely [sic] of the program, plan, or method worked out before hand by federal officials to afford every child the right to a public education."

18

1 | In their opposition to the motion to dismiss, plaintiffs contend:

> 33. Plaintiffs claim that the Defendants failed to provide Corey Victor 'fair treatment' when Defendants refused to protect the Plaintiff from student and staff bullies who repeatedly victimized him during school hours and on school grounds.
>
> 34. Plaintiffs contend the victimizations were sparked by Plaintiff Victor's inability to communicate his needs, and were so severe they rose to the level of 'discrimination.' Defendants' failures in this regard created a hostile learning environment for Plaintiff Victor.
>
> ...
>
> 36. Plaintiffs contend the victimizations were so severe, pervasive and objectively offensive, they undermined and detracted from the young Plaintiff's educational experience thereby effectively denying Plaintiff Victor equal access to a FAPE.

Plaintiffs argue that the claims that defendants failed to protect Victor from bullying and assaults are issues to be resolved by school disciplinary and police authorities outside the IEP procedures and that the IDEA does not provide a remedy for these types of claims.

Defendants' motion to dismiss the Second Claim for Relief on this ground is denied. Although the FAC refers to the IDEA and a FAPE, the allegations are sufficiently clear that plaintiffs' claim is not based on the failure to comply with the requirements of the IDEA but rather on the failure of defendants to protect plaintiff Victor from harassment and assault which prevented plaintiff Victor from taking advantage of the IEP plan. These allegations are sufficiently like those involved in <u>Witte</u> and

19

Blanchard to negate dismissal for failure to exhaust administrative remedies.

**E.   Prayer for Punitive Damages against Modesto City Schools District.**

Defendants move to strike the prayer for punitive damages to the extent that the FAC seeks punitive damages against the Modesto City Schools District.

There is no question that punitive damages are not recoverable in a Section 1983 action against a municipality, City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981), or against a public entity under California law, California Government Code § 818.  Therefore, the prayer for punitive damages against the Modesto City Schools District is stricken with prejudice.

ACCORDINGLY:

1.   Defendants' Motion to Dismiss the First, Second and Third Claims for Relief in the Fourth Amended Complaint is granted in part and denied in part with leave to amend.

2.   Plaintiffs are ordered to file a Fifth Amended Complaint in accordance with the rulings herein within 30 days of the filing date of this order.

IT IS SO ORDERED.

**Dated:   August 28, 2006**                         /s/ Anthony W. Ishii
0m8i78                                               UNITED STATES DISTRICT JUDGE